636 A.2d 1248

Carol A. PEAK and Ralph W. Peak, As Administrators
of the Estate of Sherry Ann Peak and in their
own right as individuals

v.

Steven T. PETROVITCH, Union Township, Mahoning Township, Mahoning Township Volunteer Fire Department, North Beaver Township, North Beaver Township Volunteer Fire Department, Lawrence County, Ronald Wetli, Jack Mahaven and Commonwealth of Pennsylvania State Police.

Appeal of Ronald WETLI, Jack Mahaven and Commonwealth of Pennsylvania State Police, Appellants.

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1993.

Decided Jan. 7, 1994.

Reargument Denied Feb. 25, 1994.

Brian H. Baxter, Deputy Atty. Gen., for appellants.

Daniel I. Herman, for appellees.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Ronald Wetli, Jack Mahaven and the Commonwealth of Pennsylvania State Police (collectively, the State Police) appeal from an order of the Court of Common Pleas of Lawrence County denying their preliminary objections alleging immunity from liability under the Sovereign Immunity Act.[1]

## I.

This appeal comes before us as a result of a fatal accident involving Sherry Ann Peak (Peak/Deceased) that occurred during the early hours on New Years Day, 1991. On the previous night, Peak attended a New Years Eve party. Also present at the party was Steven Petrovitch (Petrovitch) who allegedly had been consuming alcoholic beverages and using controlled substances. On January 1, 1991, at approximately 4:30 a.m., Petrovitch and Peak left the party with Petrovitch driving Peak in a car he borrowed from a friend. The route he took was over a bridge which crossed the Mahoning River. Due to a continuing heavy rain which had started the night

---

1. Act of October 5, 1980, P.L. 693, *as amended,* 42 Pa.C.S. §§ 8521–8528.

before, the Mahoning River had overflowed onto the exit point of the bridge. Whether there were warning signs or barricades at the entrance of the bridge indicating that it was unsafe is in dispute. However, there is no doubt that Petrovitch began to cross the bridge in the car, and upon exiting the bridge, the car became partially submerged in the water which had overflowed from the Mahoning River. Because water came up to the level of the car doors, the car was out of Petrovitch's control. The car was then pushed by the force of the water flowing from the Mahoning River and was stopped from totally being pulled into the river by poles immediately adjacent to the northwest side of the bridge.

Petrovitch and Peak were apparently attempting to exit the car when Peak was pulled by the force of the water into an off-shoot of the Mahoning River. Soon after this occurred, State Trooper Jack Mahaven (Mahaven) and State Trooper Ronald Wetli (Wetli) arrived on the scene, as did the North Beaver Volunteer Fire Department and the Mahoning Township Volunteer Fire Department. What attempts, if any, were made by the State Troopers and/or the two volunteer fire departments to rescue Peak during the ensuing hour is not clear. However, what is known is that Peak was not rescued, and after crying for help and remaining submerged in the cold water for at least 30 minutes, as well as suffering from multiple injuries, she grew tired and drowned.

## II.

Carol A. Peak and Ralph W. Peak (Administrators), parents of the Deceased and Administrators of her estate, filed a wrongful death and survival action against Petrovitch, Union Township, Mahoning Township, Mahoning Township Volunteer Fire Department, North Beaver Township, North Beaver Township Volunteer Fire Department, Lawrence County, Wetli, Mahaven and the Pennsylvania State Police, and demanded a jury trial. They alleged, *inter alia*,[2] that the

2. The complaint also alleged that a) Union Township, Mahoning Township, North Beaver Township and Lawrence County were negligent because they all improperly maintained the bridge, failed to control the

266

Deceased's fatal injuries were solely, directly and proximately the result of the negligence of the State Police because they assumed control of the accident site and:

· failed to call 911 or alert necessary emergency services to rescue the Deceased;

· failed to alert other State Police specifically trained in such emergencies;

· failed to alert other law enforcement agencies to the emergency; and

· failed to use due care and diligence to rescue the Deceased while at the same time restricting other agency's attempts to rescue the Deceased.

The complaint also alleged that the State Police were previously aware of the flooding conditions of the bridge, but took no action to place warning signs or barriers or to control, supervise or restrict vehicular traffic in any way from the bridge during the time in question. The complaint further alleged that the Deceased's injuries and death were also the result of Petrovitch's actions and negligence, including his operation of the vehicle by driving under the influence of alcohol and controlled substances and by proceeding into a dangerous condition.[3]

waters of the Mahoning River from flooding the road area adjacent to the bridge, failed to restrict access to the bridge in bad weather, failed to give any warning of the dangerous condition of which they were aware and failed to keep the bridge in a safe condition for the general public; and b) Mahoning Township Volunteer Fire Department and North Beaver Township Volunteer Fire Department were negligent because they refused or were unable to aid in the rescue of the Deceased, were improperly trained to aid in such a rescue attempt, did not call for assistance, and did not take any steps to rescue, aid or assist the Deceased in any manner. However, because this appeal has only been brought by the State Police, we will only address the allegations leveled against them.

3. The Administrators also argued that the State Police were not immune from suit under the traffic controls exception to governmental immunity found at 42 Pa.C.S. § 8542(b)(4). However, that section only applies to local agencies, not Commonwealth parties such as the State Police. See 42 Pa.C.S. § 8501.

The State Police filed preliminary objections in the nature of a demurrer,[4] arguing that they enjoyed sovereign immunity and were immune from suit because there was no cause of action at common law to effectuate the rescue and no special relationship existed between the State Police and the Deceased. Moreover, even if a common law cause of action existed, it did not fall within any of the exceptions to sovereign immunity.

■■■■ By order dated March 31, 1993, the trial court denied the State Police's preliminary objections without prejudice so that they could file an appropriate pretrial motion raising the same issues for resolution. Pursuant to Pa.R.A.P. 312,[5] the State Police then filed a petition with the trial court requesting certification of the case to this court so that we could determine whether they could be held liable under any exception to sovereign immunity for an alleged inadequate or negligent response to a rescue situation. The trial court issued an order on April 27, 1993, granting the State Police's petition because the case involved questions of law where there were substantial grounds for difference of opinion regarding the issues of sovereign immunity and a special duty to act. The State Police filed their petition for permission to appeal with this court which we granted by order dated May 25, 1993.[6]

4. The preliminary objections also contained a motion to strike on the basis that paragraph 115(g) of the Administrator's complaint, alleging that the State Police failed to use due care and diligence in the rescue of the decedent, was the type of general language not permitted under Pa.R.C.P. No. 1019(a). That rule requires that the material facts upon which a cause of action is based shall be set forth in the complaint.

5. Pa.R.A.P. 312 provides that an appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission). Under Chapter 13, Pa.R.A.P. 1311 provides that appeal may be taken by permission from any interlocutory order of a lower court or other government unit.

6. Our scope of review of the trial court's dismissal of preliminary objections in the nature of a demurrer is determined by whether on the facts averred, the law states with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970). The court must accept as true all well-pled allegations and material facts averred in the complaint, as well as all reasonable

## III.

### A.

██ The State Police first contend that the trial court erred in dismissing their preliminary objections because Petrovitch's actions were criminal in nature and acted as a superseding cause barring any negligence action against them. They rely on this court's holding in *Powell v. Drumheller*, 153 Pa.Commonwealth Ct. 571, 621 A.2d 1197 (1993), in which Drumheller attempted to pass another car and collided with Powell's oncoming vehicle killing him. Drumheller was convicted of driving under the influence of alcohol and vehicular homicide. Powell's complaint alleged that the accident was caused by Drumheller's negligent operation of his car and the Pennsylvania Department of Transportation's (PennDot) negligent maintenance of the road. We determined that PennDot, as a commonwealth party, was immunized from joint tortfeasor liability because the conduct of Drumheller, a third party, was criminal and the cause of the accident.

██ However, in this case, we need not reach the issue of whether Petrovitch's actions acted as a superseding cause because unlike in *Powell*, the State Police and Petrovitch are not joint tortfeasors.[7] In determining whether parties are separate or joint tortfeasors, some of the factors to be considered are:

· whether there exists a common duty;

· whether the negligent acts are severable as to time;

· whether the injury to the plaintiff is single and indivisible; and

inferences deducible therefrom. *Wurth v. City of Philadelphia*, 136 Pa.Commonwealth Ct. 629, 584 A.2d 403 (1990). Where doubt exists as to whether a demurrer should be sustained, the doubt should be resolved in favor of overruling it. *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 465 A.2d 1231 (1983).

7. Also regarding joint tortfeasor liability, the Administrators argue that "a governmental unit can be found jointly liable with a non-governmental unit, indemnification required upon proof of negligence, wherefore a cause of action, despite the State Sovereign Immunity Act, has been established." We find this argument to be meritless.

· whether the breaching parties had an opportunity to guard against the other's acts.

*Harka v. Nabati*, 337 Pa.Superior Ct. 617, 487 A.2d 432 (1985).

Applying these factors to the facts pled shows that Petrovitch and the State Police were not joint tortfeasors. Petrovitch, who allegedly was driving under the influence of alcohol and controlled substances, owed the Deceased, as his passenger, a duty to drive safely and within the boundaries of the law. That duty included driving without any impairment by alcohol or controlled substances. *See* 75 Pa.C.S. § 3731(a). The injuries which the Deceased suffered specifically as a result of Petrovitch's driving were then solely attributable to Petrovitch and were not related in any way to the State Police's alleged failure to rescue her from the Mahoning River. Nor can Petrovitch be considered to have had an opportunity to guard against the State Police's actions because it is not alleged that he was in any way involved with the alleged decision not to attempt a rescue.

Conversely, the State Police's failure to rescue was not in any way connected to Petrovitch's purported negligence that led to the accident. The Deceased's drowning, which was a result of the alleged failure by the State Police to rescue her and to prevent her rescue, is solely attributable to the State Police and not to Petrovitch. The alleged negligence caused by either Petrovitch or the State Police, if any, occurred at different times and caused separate injuries, and consequently, they are not joint tortfeasors for purposes of sharing liability. Accordingly, the principles enunciated in *Powell* are inapplicable.

## B.

 The State Police argue next then that the trial court erred in dismissing their preliminary objections because they had no common law duty to rescue the Deceased. Because 42 Pa.C.S. § 8522(a) [8] requires as a prerequisite that to maintain

8. That section provides the following:

an action against a Commonwealth party, the plaintiff must show he or she possesses a common law or statutory cause of action against a Commonwealth party, the State Police contend the Administrators' action should have been dismissed. *Bruce v. Commonwealth, Department of Transportation,* 138 Pa.Commonwealth Ct. 187, 588 A.2d 974 (1991); *petition for allowance of appeal denied,* 533 Pa. 626, 620 A.2d 492 (1993).

The Administrators, however, contend that the State Police had a common law duty to rescue the Deceased because they had established a special relationship with her to effectuate her rescue, and by failing to do so, their actions amounted to gross negligence or willful misconduct. Generally, the police only have a common law duty to protect the public when carrying out their duties, and their failure to act generally cannot be considered to harm an individual. *See Agresta v. City of Philadelphia,* 158 Pa.Commonwealth Ct. 230, 631 A.2d 772 (1993) (overruled in unrelated part by *City of Philadelphia Police Department v. Gray,* 534 Pa. 467, 633 A.2d 1090 (1993). In *Morris v. Musser,* 84 Pa.Commonwealth Ct. 170, 174, 478 A.2d 937, 939–940 (1984), this court held:

> The no-duty rule provides that a police officer's obligation to protect the citizenry is a general duty owing to the public at large, and not a specific duty owing to particular persons. . . . If the police enter into a special relationship with an individual, however, the general duty owing to the public is narrowed into a specific duty owing to that person, the breach of which can give rise to a cause of action for damages.

> (a) **Liability imposed.**—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

This general duty to the public may become a duty to an individual if a special relationship exists different from that of the general public. *Bruce.*

To establish a special relationship, a party must show that the governmental entity was:

1. Aware of the individual's situation or unique status;

2. Had knowledge of the potential for the particular harm the individual suffered; and

3. Voluntarily assumed, in light of the knowledge, to protect the individual from the precise harm which was occasioned.

*Rankin v. Southeastern Pennsylvania Transportation Authority,* 146 Pa.Commonwealth Ct. 429, 606 A.2d 536 (1992).

While the Administrators have not alleged that the State Police were aware of the Deceased's particular situation or had knowledge of the potential for her death, we may assume from the facts pled that once they arrived on the scene, they were aware of the dangers of the surrounding circumstances, including the possibility that the Deceased could drown. As to whether the State Police voluntarily assumed to rescue the Deceased, within the Administrators' cause of action stating that the State Police failed to voluntarily assume the responsibility to rescue the Deceased is subsumed that the State Police did not voluntarily assume that responsibility.[9] As such, there can be no special relationship between the State Police and the Deceased and no common law duty to rescue her. For that reason alone, the Administrators' action cannot be maintained.[10]

9. They contend in their brief that somehow a special relationship existed because the State Police "acted in a grossly negligent manner." They analogize this situation to the Good Samaritan statute found at 42 Pa.C.S. § 8332 where a good samaritan can be held liable if grossly negligent in his efforts to aid another. The Administrators contend that this principle applies here and the State Police should be similarly held liable. Ignoring that gross negligence was not pled, the Good Samaritan statute is inapplicable; again, this principle only applies when a rescue is attempted.

10. The Administrators also argue that if we find a special relationship did not exist and the State Police had no public duty to rescue the

272

C.

 Even if the State Police had established a special relationship with the Deceased, the Administrators still had to prove that their action fell within one of the exceptions to sovereign immunity. The Administrators contend that their action fell under 42 Pa.C.S. § 8522(b)(4), the Commonwealth real estate exception to sovereign immunity. 42 Pa.C.S. § 8522(b)(4) provides the following:

**Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

(4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including *Commonwealth-owned* real property, *leaseholds* in the possession of a Commonwealth agency and *Commonwealth-owned real property leased by a Commonwealth agency* to private persons, and *highways under the jurisdiction of a Commonwealth agency* .... (Emphasis added.)

The Administrators, however, have not alleged that the State Police own or lease the bridge over which the Deceased travelled or the Mahoning River in which she drowned. Neither have they alleged that the State Police have jurisdiction over the bridge or the Mahoning River. While they do allege that the State Police had control over the accident site, by taking control of the scene they were merely exercising their police power. That type of control is not tantamount to conferring jurisdiction over the bridge to the State Police and does not constitute control over Commonwealth real estate as that term is used in the Sovereign Immunity Act. *Pennsylvania State Police v. Bennett,* 160 Pa.Commonwealth Ct. 223, 634 A.2d 776 (1993). More importantly, the Administrators specifically allege in their complaint that the various townships named as defendants in this case had exclusive control over

Deceased, we should create one. We decline to do so. Reforming a constitutional statute or creating a new one is for the General Assembly.

the bridge, and those townships as well as Lawrence County were responsible for the maintenance of the bridge.[11] Consequently, because the State Police do not own, lease or have jurisdiction over the bridge or the Mahoning river, they have not waived sovereign immunity under 42 Pa.C.S. § 8522(b)(4).[12]

## IV.

Because the Administrators failed to establish that the State Police had a common law duty to rescue the Deceased and their cause of action fell within one of the exceptions to sovereign immunity contained in 42 Pa.C.S. § 8522(b), the State Police, as a Commonwealth party entitled to sovereign immunity, is immune from any liability for damages arising from Peak's death. Accordingly, because the law states with

11. Specifically, in the Administrators' complaint at paragraph 13, they stated the exit point of the bridge was under the exclusive control of Union Township, Mahoning Township and North Beaver Township; at paragraph 31, they stated that at all times relevant the County of Lawrence was responsible for the maintenance of the bridge and had knowledge that the bridge became dangerous and unfit for vehicular traffic during inclement weather but took no actions to warn or restrict vehicular traffic from the bridge; and at paragraph 32, they said that the bridge was the responsibility of Mahoning Township, North Beaver Township, Union Township and Lawrence County.

12. (5) The Administrators also contend that their action fell under the exception to sovereign immunity found at 42 Pa.C.S. § 8522(b)(5). That exception provides that sovereign immunity will be waived for claims for damages caused by:

Potholes and other dangerous conditions.—A dangerous condition of highways *under the jurisdiction of a Commonwealth agency* created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the Commonwealth agency had *actual written notice* of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition. Property damages shall not be recoverable under this paragraph. (Emphasis added.)

Because the State Police do not have jurisdiction of the bridge or river where the accident occurred, and the Administrators have not alleged that the State Police had actual written notice of the dangerous condition of the bridge, sovereign immunity is not waived under this exception. *See Cressman v. Commonwealth, Department of Transportation,* 114 Pa.Commonwealth Ct. 348, 538 A.2d 992 (1988).

274

certainty that no recovery is possible from the State Police, the trial court's order dated March 31, 1993, denying the State Police's preliminary objections and motion to strike is reversed. The case is remanded to the trial court to dismiss Ronald Wetli, Jack Mahaven and the Commonwealth of Pennsylvania State Police as parties to this action.

*ORDER*

AND NOW, this 7th day of January, 1994, the order of the Court of Common Pleas of Lawrence County dated March 31, 1993, dismissing the preliminary objections and motion to strike filed by Ronald Wetli, Jack Mahaven and Commonwealth of Pennsylvania State Police, is reversed. The case is remanded to the trial court to dismiss Ronald Wetli, Jack Mahaven and the Commonwealth of Pennsylvania State Police as parties to this action. Jurisdiction is relinquished.