## Robinson v. Kenyon

C.P. of Monroe County, no. 6575 Civil 1999.

*Scott B. Bennett,* for plaintiff.
*William A. Slotter,* for defendant Pennsylvania State Police.
*Cynthia L. Nicholson,* for defendant Greenwich.
*Edward W. Wertman,* for defendants Spicer and Sneed & Associates.
*Benjamin A. Nicolosi* and *Stephen G. Bresset,* for defendants Kenyon.
*Robert D. Silva* and *Mark T. Perry,* for defendants Reik, Albertson, Baddour and Ramsey.
*Daniel J. Divis,* for defendant Borough of Moosic.

CHESLOCK, *J.,* February 14, 2000—Plaintiffs commenced this action by filing a complaint on September 2, 1999. On September 27, 1999, defendants, Dr. Alan J. Kenyon and Bonnie J. Kenyon, filed preliminary objections to plaintiffs' complaint, and on October 4, 1999, filed supplementary preliminary objections. On October 8, 1999, plaintiffs filed an amended complaint. Defendant, Greenwich Ophthalmology Associates P.C., filed preliminary objections to plaintiffs' amended complaint on November 15, 1999 and a brief in support thereof on December 9, 1999. On December 12, 1999, plaintiffs

responded to Greenwich's preliminary objections. On January 3, 2000, this court entered an order granting defendant Greenwich's preliminary objections, dismissing plaintiffs' complaint against it.

On December 13, 1999, defendants, Pennsylvania State Police and Trooper Robert Tyler, filed preliminary objections in the nature of a demurrer to plaintiffs' complaint and a brief in support thereof. Plaintiffs filed an answer and a contra-brief on February 1, 2000. Oral argument was heard before this court on February 1, 2000. We are now ready to dispose of PSP and Trooper Tyler's preliminary objections.

Defendants' preliminary objections are in the nature of a demurrer to the complaint. "[A] demurrer is a preliminary objection that the pleadings fail to set forth a cause of action upon which relief can be granted *under any theory of law.*" *Sutton v. Miller,* 405 Pa. Super. 213, 221, 592 A.2d 83, 87 (1991). (emphasis in original) It will not be sustained unless the law says with certainty that no recovery is possible. *Hull v. Rose, Schmidt, Hasley & DiSalle P.C.,* 700 A.2d 996 (Pa. Super. 1997). All material facts set forth in the complaint, as well as inferences reasonably deducible therefrom, are admitted as true. *Webb Manufacturing Co. v. Sinoff,* 449 Pa. Super. 534, 674 A.2d 723 (1996). However, the court need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion. *Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 702 A.2d 850 (1997). In addition, a demurrer can only be granted in cases that are clear and free from doubt, and any doubt must be resolved against the non-moving party. *Mellon Bank N.A. v. Fabinyi,* 437 Pa. Super. 559, 650 A.2d 895 (1994).

Initially, we shall set forth the facts, which we must view as true, giving rise to plaintiffs' complaint. On October 13, 1997, at approximately 6:30 p.m., plaintiff, Walter Robinson, was operating his station wagon on Interstate 80 in Monroe County. Plaintiffs, Karen Robinson, Julie Robinson and Brian Beierle, Mr. Robinson's wife and children, respectively, were passengers in the station wagon. The Robinson vehicle sustained a flat tire, so Walter Robinson pulled the vehicle onto the shoulder and proceeded to change the tire.

Defendant, Dr. Kenyon, was operating his Sonoma pickup truck on Route 380 at approximately the same time. While on patrol, Trooper Tyler received a report that Dr. Kenyon's vehicle was traveling eastbound on Route 380 in an erratic manner, hitting the concrete barrier dividing the east- and westbound lanes. Trooper Tyler initiated a traffic stop of Dr. Kenyon's vehicle. Trooper Tyler released Dr. Kenyon, permitting him to continue to operate his vehicle.

Dr. Kenyon then began traveling on Interstate 80. Subsequently, he lost control of his vehicle and crashed into the rear of the Robinson vehicle as Walter Robinson was placing the flat tire into his vehicle's trunk. Walter Robinson was crushed between the two vehicles, suffering severe injuries. As a result, Walter Robinson's right leg was amputated above the knee.

At the accident scene, Pennsylvania State Police Trooper Barletto interviewed Dr. Kenyon. In his report, he states that Dr. Kenyon appeared confused and his actions and words were very slow. As part of the investigation, Trooper Barletto interviewed defendant Bonnie Kenyon, Dr. Kenyon's wife. Bonnie Kenyon stated that

Dr. Kenyon suffers from dementia and described various traffic incidents Dr. Kenyon has had in the past.

Plaintiffs argue that PSP and Trooper Tyler were negligent due to Trooper Tyler's failure to prevent Dr. Kenyon from operating his vehicle on the night of the accident. PSP and Trooper Tyler have raised the sovereign immunity defense. They argue that no special relationship between Trooper Tyler and plaintiffs exists creating a duty from Trooper Tyler to plaintiffs individually. Thus, plaintiffs have no common-law negligence action against either PSP or Trooper Tyler.[1] Moreover, even if said common-law action exists, it does not fall within any sovereign immunity exception. Therefore, PSP and Trooper Tyler's demurrer must be granted. Plaintiffs contend that the negligence causes of action against PSP and Trooper Tyler are grounded on section 324A of the Restatement (Second) of Torts and that Trooper Tyler's actions fall within two exceptions to sovereign immunity. We will address each issue in turn.

In this matter, the controlling statute is 42 Pa.C.S. §8522, which states in pertinent part:

"Liability imposed.—The General Assembly, pursuant to Section 11 of Article 1 of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only, . . . sovereign immunity as a bar to an action against Commonwealth parties,[2] for damages

---

[1]. To establish a cause of action in negligence, the plaintiff must demonstrate that defendant owed a duty of care to plaintiff, defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage. *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458 (1998).

[2]. It is undisputed that PSP and Trooper Tyler are "Commonwealth parties" pursuant to the meaning set forth in 42 Pa.C.S. §8501.

arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa.C.S. §8522(a).

Subsection (b) sets forth nine situations under which the Commonwealth waives sovereign immunity.[3] Thus, a plaintiff seeking to overcome a sovereign immunity defense must meet two distinct requirements. "First, the plaintiff must show that he possesses a common-law or statutory cause of action against a Commonwealth party, section 8522(a), 42 Pa.C.S. §8522(a), and second, he must demonstrate that the cause of action falls within one of the exceptions to sovereign immunity contained in section 8522(b), 42 Pa.C.S. §8522(b)." *Norbert v. Pennsylvania State Police,* 148 Pa. Commw. 505, 510, 611 A.2d 1353, 1355 (1992).

Plaintiffs seek to impose a duty of care owed by PSP and Trooper Tyler to plaintiffs by reference to section

---

3. The Commonwealth waives the defense of sovereign immunity in the following situations: (1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody or control of personal property in the possession or control of Commonwealth parties; (4) a dangerous condition of Commonwealth agency real estate, highways and sidewalks; (5) a dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody or control of animals in the possession or control of a Commonwealth party; (7) liquor store sales at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) the administration, manufacture and use of a toxoid or vaccine not manufactured in this Commonwealth. 42 Pa.C.S. §8522(b)(1)-(9).

324A of the Restatement (Second) of Torts, liability to third person for negligent performance of undertaking, which provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to third person . . . ." Restatement (Second) of Torts §324A (1965).

Plaintiffs argue that Trooper Tyler violated section 324A(a) by failing to exercise reasonable care and prevent Dr. Kenyon from resuming operation of his vehicle, thereby increasing the risk of death or serious bodily injury to the plaintiffs. Plaintiffs also argue that Trooper Tyler violated section 324A(b). By stopping and assuming control over the Kenyon vehicle, Trooper Tyler, undertook to perform the same duty that Dr. Kenyon himself owed to plaintiffs, *i.e.,* to prevent a driver whose dementia was exacerbated by fatigue from operating a motor vehicle on Commonwealth highways. We disagree.

Section 323 of the Restatement (Second) of Torts is almost identical to section 324A.[4] The sole difference is

---

4. Section 323 states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

that section 323 creates a direct duty to the person to whom the services are being rendered while section 324 creates a duty to third parties while services are being rendered to another. The Pennsylvania Supreme Court has held that section 323 does not apply to government because "government does not act either gratuitously or for consideration, . . . but [acts] pursuant to its required or discretionary duties in the process of governing." *Gardner v. Consolidated Rail Corp.,* 524 Pa. 445, 453-54, 573 A.2d 1016, 1020 (1990). Section 324A also requires one to act "gratuitously or for consideration." Therefore, it logically follows that section 324A does not apply to government.

Furthermore, Pennsylvania law is clear that police only have a common duty to protect the public when carrying out their duties. *Peak v. Petrovitch,* 161 Pa. Commw. 261, 270, 636 A.2d 1248, 1252 (1994). "There is generally 'no duty resting on a municipality or other governmental body to provide police protection to any particular person.' " *Philadelphia v. Estate of Dennis,* 161 Pa. Commw. 69, 73, 636 A.2d 240, 241-42 (1993). This general duty to the public only becomes a duty to an individual if a special relationship exists different from that of the general public. *Peak,* 161 Pa. Commw. at 270, 636 A.2d at 1252. To establish a special relationship, a party must show that the governmental entity was:

"(1) [A]ware of the *individual's* situation or unique status,

---

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts §323 (1965).

"(2) [H]ad knowledge of the potential for the particular harm the *individual* suffered, and

"(3) [V]oluntarily assumed, in light of that knowledge, to protect the *individual* from the precise harm which was occasioned." *Estate of Dennis,* 161 Pa. Commw. at 73, 636 A.2d at 242 (emphasis in original); see also, *Melendez v. City of Philadelphia,* 320 Pa. Super. 59, 64, 466 A.2d 1060, 1064 (1983); *Rankin v. SEPTA,* 146 Pa. Commw. 429, 435, 606 A.2d 536, 538 (1992).

Here, plaintiffs have failed to plead that Trooper Tyler knew the Robinson vehicle was on the shoulder of Interstate 80 with a flat tire, that Dr. Kenyon was going to leave Route 380 to travel on Interstate 80, that Dr. Kenyon suffered from dementia, or that Dr. Kenyon was going to lose control of his vehicle and strike Walter Robinson. Furthermore, there is no averment that Trooper Tyler had volunteered to protect plaintiffs from Dr. Kenyon. "Absent an express promise to render care or protection, no special relationship is created." *Estate of Dennis,* 161 Pa. Commw. at 74, 636 A.2d at 242. In short, there is no special relationship between PSP and/or Trooper Tyler and plaintiffs, and therefore, no duty to the plaintiffs.

Plaintiffs argue that a "special relationship" may also be established as a result of the "special danger" to which plaintiffs were subject and rely on *Berlin v. Drexel University,* 10 D.&C.3d 319 (Phila. 1979), in support of this contention.[5] According to Berlin, "[w]here a member of

5. Although used to support plaintiff's argument, the *Berlin* case supports this court's decision that PSP and Trooper Tyler owed no duty to plaintiffs. In *Berlin,* the plaintiff was shot in the leg by an unknown assailant while walking from the rear of his fraternity house to a garage in a "high crime area." *Id.* Berlin sued the City of Philadelphia for breach of its duty to provide police protection and to prevent criminal activity. *Id.* The *Berlin* court held that under the circumstances,

the public has been exposed to special danger, . . . and the authorities have undertaken the responsibility to provide adequate protection, breach of that duty may be liability creating." 10 D.&C.3d at 328. However, after carefully reviewing *Berlin,* we believe that plaintiffs' reliance is misplaced. In dicta, the *Berlin* court indicated that "special danger" arises from a "special relationship" between the police and an individual, such as an undercover agent, a prosecution witness, or a police informant. *Id.* at 328. An undercover agent, a prosecution witness, or a police informant, as opposed to an average member of the public at large, is subject to unique dangers inherent in the activities and encounters that go hand-in-hand with his or her role. The facts of the instant matter do not give rise to a special danger of the sort contemplated by the *Berlin* court. Being involved in an automobile collision is a risk shared by the general public who travel on Commonwealth highways.

Accordingly, we enter the following order:

## ORDER

And now, February 14, 2000, the preliminary objections of the defendants, Pennsylvania State Police and Trooper Robert Tyler, are granted. Plaintiffs' complaint against defendants, Pennsylvania State Police and Trooper Robert Tyler, is hereby dismissed with prejudice.

---

the municipality owed no duty to the plaintiff as a private individual; Berlin was entitled to the general duty the police owe the public at large. Likewise, in the instant matter, PSP and Trooper Tyler merely had a general duty to protect the public traveling on the highways and not a specific duty to protect the plaintiffs individually from becoming the victims of this collision.